## BROWN v. BENIGHT and WIFE.

If one of two joint debtors die, the survivor may be sued for the debt; and if the survivor be insolvent, the estate of the deceased debtor is chargeable for the debt in equity.

A person set out from this state for *New-Orleans* on a trading voyage, leaving his wife and five small children in a destitute situation. His debts exceeded the value of his property, and he did not live to return home. Within a year after his departure, and before his wife had any certain knowledge of his death, she had used the property left by him in the support of the family and in the payment of his debts. *Held* that, under these circumstances, the widow was not liable, as an executrix *de son tort*, to the creditors of her husband.

If a father and son are both called *A. B.*, by naming *A. B.* the father *prima facie* shall be intended.

*B.* received from *A.*, resident in *New-York*, 100 dollars with a request to buy with the money a tract of land for *A.* in *Indiana*, to take the title in *A.'s* name, and permit the son of *A.* to occupy the land during *A.'s* pleasure. *B.* accordingly bought a tract of land for *A.* in this state, paid on it the money received from *A.*, took an assignment to *A.* of the certificate of purchase, and delivered the same to him. The son occupied the land, and paid the further sum of 110 dollars of the purchase-money. *Held*, that this purchase must be considered as made for the father alone; that the legal and beneficial interest was vested in him; and that the land was not liable for the debts of the son.

BLACKFORD, J.—This is a suit in chancery transferred from the *Vigo* Circuit Court, the Circuit Judge being interested. The bill states, that *Samuel Bidleman* and *William Battels* were jointly indebted to the complainant, in 1826, for the price of two-thirds of an *Orleans'* boat and cargo of corn; that *Bidleman* died in *New-Orleans*, within six months or a year after the debt was contracted; that *Battels* is absent from the country and insolvent; and that a balance of the debt, being 182 dollars and 25 cents, remains unpaid. The bill further states, that *Samuel Bidleman*, at the time of his death, was possessed of considerable goods and chattels in *Vigo* county; that his widow, then *Sally Bidleman*, took possession of them and sold them; that, besides other property of the deceased received and disposed of by the widow, there was a certificate for a half-quarter section of land in *Vigo* county, which had cost him 200 dollars; and that this land certificate, with some other property, was sold by the widow to *Benight*, with whom she has since intermarried.

May Term,
1832.

Brown
v.
Benight.

. The object of the bill is to obtain a discovery of the assets of *Bidleman's* estate, and a payment out of them of the complainant's demand.  The defendants deny the debt claimed by the bill, except the sum of 33 dollars as the price of one-third of the boat; and this sum is alleged to have been paid.  They deny that *Samuel Bidleman*, deceased, was ever the owner of the land certificate, or of the land, mentioned in the bill. They aver that the property of *Bidleman*, made use of by the defendant *Sally*, was appropriated by her, before her knowledge of *Bidleman's* death, to the payment of his debts and the support of his family.  They further state, that, since the death of *Bidleman*, the defendant *Benight* has taken out letters of administration on the estate; that the assets which have come to his hands do not exceed 50 dollars; and that the balance of that sum, after deducting the expenses of administration, he has permitted the defendant *Sally* to retain, as part of the 100 dollars given to her by the statute.

. The first inquiry in this case is, whether there is any thing due to the complainant from *Bidleman's* estate?  The following is the proof: In the spring of 1826, *Bidleman* and *Battels* purchased of *Brown* two-thirds of a boat, which they loaded with corn of their own, except about 500 bushels received from *Brown* and to be sold for him at *New-Orleans.*  *Brown* furnished a hired man and part of the provisions for the trip.  The boat soon afterwards arrived safe at *Natchez;* where *Bidleman* and *Battels* offered the corn for sale, but without success.  They left *Natchez*, two weeks after their arrival, for *New-Orleans;* and this is the last we hear of the boat or cargo.  Neither *Bidleman* nor *Battels* ever returned.  The former is dead, and the latter insolvent.  These facts show, that *Bidleman* and *Battels* were jointly indebted to *Brown* for two-thirds of the boat.  Whether or not they were also indebted to him for the corn he furnished, we shall not stop to inquire.  On *Bidleman's* death, *Battels* might have been sued for the joint debt; and on *Battels'* insolvency, the estate of *Bidleman* became chargeable for it in equity (1).

The next question is, whether the defendants, *Benight* and *Sally* his wife, executrix of *Bidleman*, are liable to a decree for the debt, or any part of it, for having wasted the assets of the intestate?  It is proved, that when *Bidleman* set out with the boat, he left his wife and five small children in a destitute

condition; and that his debts were greater than the personal property he left was worth.   Within less than a year after his departure, and before any certain knowledge of his death, his wife had made use of this property in the support of his family and the payment of his debts.   Among other creditors, she paid the complainant 39 dollars on account of his present demand.   We are of opinion that she did not make herself liable to the complainant for any amount, under these circumstances, as executrix in her own wrong.   It is further proved, that, in 1823, *Samuel Bidleman*, sen., then and still resident in *New-York*, the father of the *Bidleman* mentioned in the bill, delivered 100 dollars to *Benight* with instructions to buy land in *Indiana* with the money for him, *Samuel Bidleman*, sen.; to take the title in his, the father's name; and to permit his son *Samuel* to occupy the land during his, the father's pleasure. *Benight*, accordingly, bought the land mentioned in the bill, for *Samuel Bidleman*, sen.; paid the 100 dollars, money of *Samuel Bidleman*, sen.; and received the certificate assigned to *Samuel Bidleman*, by which name both the seller and *Benight* intended *Samuel Bidleman*, sen., resident in *New-York*.   Besides the 100 dollars so paid by *Benight*, *Samuel Bidleman*, jun. paid to the vendor of the land 110 dollars in property.   *Benight*, afterwards, delivered the certificate for the land to his principal, *Samuel Bidleman*, sen.   From the time of this purchase, in 1823, the land was occupied by *Samuel Bidleman*, jun., until his departure for *New-Orleans* in 1826.   These are the material facts proved as to this part of the case.

The assignment of this land certificate must be considered, under the circumstances, as having been made to *Samuel Bidleman*, the father.   It is decided that if father and son are both called *A. B.*, by naming *A. B.* the father *prima facie* shall be intended.   *Lepiot* v. *Browne*, 1 Salk. 7.   Besides, it is expressly proved that, in the case before us, the father was intended. But notwithstanding the assignment was to the father, if the purchase had been really a joint one by the father and son, a trust would have resulted to the latter according to the money paid by him.   *Elliott* v. *Armstrong*, *May* term, 1829.—*Botsford* v. *Burr*, 2 Johns. Ch. Rep. 405.   It appears to us, however, from the testimony, that this purchase was made on account of the father alone, and that all the parties intended that both the beneficial and legal title should be vested in him.   What

May Term, 1832.

induced the son to advance a part of the consideration-money for his father, or when or how he expected to be repaid, if at all, it is not worth while to indulge in conjecture. It is sufficient for the decision of the cause to know, that the money was not paid by the son with any view of obtaining, by such payment, any title to the land either at law or in equity; and that, in fact, no such title has ever been made to him. It is the opinion of the Court, therefore, that *Samuel Bidleman*, jun., had no interest in the land mentioned in the bill, and that it cannot be made liable to the claims of his creditors.

The account of the administration of *Benight* himself, as rendered in the answer to the bill, is not contradicted. It shows that there are no assets in his hands.

*Per Curiam.*—The bill is dismissed with costs.

*J. Farrington*, for the complainant.

*A. Kinney*, for the defendants.

(1) By the common law, upon the death of one joint-contractor, the action survives against the other or the rest, and the representative of the deceased is not liable *at law*. The *English* commissioners lately appointed, &c. had some doubt whether it would not be desirable to provide that, in the case of such death, the creditor should have the option of bringing the action either against the survivor or survivors only, or against the survivor or survivors jointly with the personal representatives of the deceased. They concluded, however, not to interfere with the existing rule. 6 Lond. L. M. 261.

In *Indiana*, the representatives of a deceased *joint* obligor are liable to an action at law, by the statute, in the same manner as if the obligation were joint and several. Rev. Code, 1831, p. 291.