# LEACH, Executor, *v.* PREBSTER.

EXECUTOR DE SON TORT.—*Liability.—Will.—Widow.*—By the terms of a will the estate was given to the widow of the testator " for her own use and benefit or maintenance during her natural life," and at her death all of said property " not used for her maintenance during her natural life " was given to another person. A person acting under her direction sold a horse and some hogs belonging to the estate and paid some debts of the estate with part of the proceeds; purchased supplies for the use of the widow with another part, and put the remainder at interest for her.

*Held*, that the widow could not sell or authorize the sale of the property, and the person so acting under her direction became an executor *de son tort.*

SAME.—The executor, as well as a creditor, may sue an executor *de son tort.*

SAME.—An executor *de son tort* is entitled to credit for debts paid by him on account of the estate, where there are sufficient assets to pay all the debts; otherwise, in proportion to the amount of the assets as compared with the debts of the estate.

APPEAL from the Hendricks Common Pleas.

DOWNEY, C. J.—Upon the trial of this cause, which was brought by the appellant against the appellee, by the court, without the intervention of a jury, there was a finding for the defendant, motion for a new trial made and overruled, and judgment for the defendant.

The only error properly assigned is the refusal of the

court to grant a new trial. The reason assigned for a new trial in the common pleas was, that the finding of the court was not sustained by the evidence, and was contrary to law.

The complaint was in two paragraphs, by the plaintiff as executor of the will of Frederick Prebster, deceased, against the defendant as *executor de son tort.* In the first paragraph it is charged that the defendant unlawfully intermeddled with, and appropriated to his own use, a certain black horse, part of the personal estate of said deceased; and in the second paragraph he is charged with wrongfully and unlawfully intermeddling with, and appropriating to his own use, twenty hogs, also part of the said estate.

The answer was a general denial.

The evidence is set out in a bill of exceptions. In our judgment, it makes out a case against the defendant. The will gives the estate to the widow, "for her own use and benefit or maintenance during her natural life," and at her death all of said property "not used for her maintenance" is given to another person.

The evidence shows that the defendant, with the assent of the widow, soon after the death of the deceased, sold the horse mentioned in the first paragraph, and four of the hogs mentioned in the second paragraph. A part of the proceeds was paid out on debts of the deceased, part for supplies for the widow, and the residue put out at interest for her use.

The inventory and appraisement, which are in evidence, show that the widow selected and took seven hundred and eighty-three dollars and thirty-five cents of personal property, besides some money which was left in her hands by the deceased, which she did not report to the executor or to the appraisers, amounting, as she says, to two or three hundred dollars. The widow had no right to sell the horse or the hogs, nor could the defendant derive any legal authority from her to do so. The fact that he made the sale under her direction and accounted to her for the proceeds, or applied them as she directed, is no justification.

Regarding Mrs. Prebster as a legatee under the will, she

could not take and dispose of the property, or authorize any one else to do so, without the assent of the executor.  *Crist v. Crist*, 1 Ind. 570.

This property or the proceeds thereof, for aught that appears in the evidence, may have been necessary to pay the debts of the estate.  All of the personal property, except what the law gave the widow, then five hundred dollars, was applicable, in the first place, to pay the debts, &c., of the deceased, and if not needed for that purpose, then it might go to the legatee.  In 2 G. & H. 488, sec. 15, it is provided as follows: that "every person who shall unlawfully intermeddle with any of the property of a decedent, shall be chargeable as an executor of his own wrong, and shall be liable to an action in the court of common pleas, or any other court of competent jurisdiction, by any creditor or other person interested in the estate of the decedent, to the extent of the damages occasioned thereby, and shall account for the full value of such property, with ten per centum thereon, and may be examined under oath touching such intermeddling, and testimony thus elicited shall not be thereafter used against him in any prosecution; and such person may also be attached and imprisoned in the discretion of the court, until its orders in the premises are complied with; and no debt due such executor from the decedent, shall be deducted from the value of any such property."

The degree or extent of the intermeddling is not very material.  A very slight circumstance of intermeddling with the goods of the deceased will make a person executor *de son tort*.  It has been the policy of the law to discourage and prevent all improper interference with the property of the deceased.  After the death of a person, there is unavoidably some lapse of time before a regular executor or administrator can be appointed and clothed with power to act, and it is during this time that acts of unwarrantable intermeddling generally take place.  If the rule protecting estates from such acts were not enforced with reasonable strictness, great

confusion and injustice would result. In England, it has been adjudged that any of the following acts constitute the person an executor *de son tort:* taking a bible; taking a bedstead; killing the cattle of the deceased; using, selling, or giving away the goods of the deceased; taking the goods by one to satisfy his own debt or legacy; demanding the debts of the deceased, making acquittances therefor, or receiving the same; selling the goods of the deceased after his death by directions given before his death. 1 Williams Ex'rs, 225 and 226. In *Hawkins* v. *Johnson,* 4 Blackf. 21, it was held by this court, that the widow, by keeping the possession of the goods of her deceased husband, and using them as her own, rendered herself liable as executor *de son tort.*

In *Chandler* v. *Davidson,* 6 Blackf. 367, it was held that the circumstance alone that the widow remained in possession of part of the personal property after the death of her husband, did not make her liable as executor *de son tort;* and see, also, *Brown* v. *Benight,* 3 Blackf. 39. In *Brown's Adm'r* v. *Sullivan,* 22 Ind. 359, it was decided by this court that when one took possession of the property of the deceased, at the request of the widow of the deceased, merely for the purpose of taking care of it, and took proper care of it, doing it no injury, until letters of administration were taken out on the estate, and then delivered up the same to the administrator, he did not thereby render himself liable as an executor *de son tort.*

The fact that the defendant acted as the agent or servant of the widow, does not protect him from liability. It seems settled that in such case both may be liable. 1 Williams Ex'rs, 226 and 227, and note (1).

It seems that the executor, as well as a creditor, may sue an executor *de son tort.* 1 Williams Ex'rs., 232 and 242. And so we construe the statute above quoted.

It may be proper to say that an executor *de son tort* is entitled to be allowed for amounts paid by him to the proper

uses of the estate, as to the payment of debts, &c. *Reagan* v. *Long's Adm'x,* 21 Ind. 264.

But this can only be allowed where there are sufficient assets to pay all the debts of the deceased; for otherwise one creditor would be paid in full, and others nothing. If there be a deficiency of assets, he should be allowed only the proportionate share of the debts which he has paid.

In some of the states, it seems that a creditor cannot sue an executor *de son tort,* but the right of action is exclusively in the executor or administrator, and the amount recovered is distributed as other assets. Willard Ex'rs, 140. Under our statute the rule is different.

The judgment is reversed, with costs to the appellant.*

*C. C. Nave,* for appellant.

*L. M. Campbell* and *R. P. Parker,* for appellee.

*Petition for rehearing overruled.